IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 18-cv-00184-MSK-KLM

**DORAN DEVELOPMENT, LLC,**

    Plaintiff,

v.

**STARWOOD RETAIL PARTNERS, LLC, and
STARWOOD CAPITAL GROUP, LLC,**

    Defendants.

_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' (collectively, "Starwood") Motion to Dismiss **(# 12)**, the Plaintiff's ("Doran") response **(# 13)**, and Starwood's reply **(# 14)**.

## FACTS

According to the Complaint **(# 1)**, in August 2017, Doran and Starwood entered into a Letter of Intent (the "Agreement") by which Doran expressed its intention to purchase a parcel of commercial real property owned by Starwood. The Agreement required that the parties keep the terms of Doran's offer confidential and that Starwood not negotiate with any other potential purchaser for a period of 30 days.

With Starwood's knowledge, Doran began expending significant sums in preparing development plans for the parcel. Nevertheless, on November 9, 2017, Starwood "changed its position . . . and requested an increase in the purchase price" of more than $1.5 million. A few

1

weeks later, Starwood proposed to Doran that, instead of a sale, the parties engage in a joint venture concerning the parcel. The Complaint is not clear, but it appears that Doran had some negotiations with Starwood about the joint venture proposal. However, in December 2017, Starwood received a more favorable offer for the property and informed Doran that it would not be accepting Doran's offer.

Doran's primary beef seems to be that Starwood allowed Doran to "spen[d] considerable sums of money in an effort . . . to consummate a transaction" and that it was "aware that Doran was foregoing [other] development opportunities in reliance on Starwood's representations that it would negotiate in good faith and attempt to finalize a transaction." Doran's Complaint alleges two claims under common law[1]: (i) breach of contract in that Starwood "fail[ed] to act in good faith in negotiations with Doran" and "fail[ed] to maintain confidentiality" as required by the Agreement; and (ii) promissory estoppel, in that Starwood made various "promises" to Duran (*e.g.* that it "was seeking internal approval of the Purchase Agreement"; that "if Doran continued to proceed with development plans . . . Starwood would sell Doran the [ ] parcel") upon which Doran relied upon to its detriment.

Starwood moves **(# 12)** to dismiss Doran's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that: (i) for purposes of the breach of contract claim relating to the Agreement, Doran does not allege any facts showing that Starwood breached either the confidentiality obligation or the 30-day exclusive dealing provision; and (ii) as to the promissory estoppel claim, such a claim is precluded by the existence of an express contract, the Agreement, and because the alleged promises are insufficiently specific to be enforced.

---

[1] The parties do not address which jurisdiction provides the governing law, and in the absence of argument on that point, the Court will assume that Colorado law applies.

2

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### B. Breach of contract

To assert a claim for breach of contract under Colorado law, Doran must allege facts showing: (i) the existence of an enforceable agreement between the parties; (ii) Doran's performance of its obligations under that agreement or an excuse for its non-performance; (iii) Starwood's failure to perform its obligations under the agreement; and (iv) resultant damages. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). The Court understands that Starwood concedes that Doran has adequately pled that the Agreement is an enforceable contract and that Doran performed its obligations under it. Thus, the Court turns to Doran's allegations of Starwood's breaches.

Doran's Complaint identifies two pertinent provisions of the Agreement: Starwood's promise not to disclose to third parties the terms of Doran's offer or the existence of the Agreement, and Starwood's promise that the parties would work in good faith to enter into a formal purchase contract within 30 days of entering into the Agreement, during which Starwood would not have discussions with any other prospective purchaser.

As to the confidentiality requirement, nothing in Doran's Complaint alleges, with any degree of concreteness, that Starwood disclosed any confidential facts to any third party. Doran's only reference to the confidentiality provision in the Complaint is paragraph 36, which asserts only the bare conclusion that Starwood "fail[ed] to maintain confidentiality." Such a naked assertion fails to satisfy *Iqbal*'s requirements of well-pleaded facts. Doran's response brief sheds little additional light on any alleged breach of the confidentiality provision. Doran argues that, because Starwood was able to secure a second potential buyer just four months after entering into the Agreement with Doran, and because "[n]egotiations generally include exerting leverage over other parties," the Court should infer that "Starwood disclosed its negotiations with

4

Doran to" an unknown third party "to exert leverage over the other potential buyer." This appears to be sheer speculation on Doran's part: it is apparently unable to identify who this third party is, when Starwood made contact with them, and what facts relating to the Doran transaction Starwood allegedly disclosed. Although Doran insists that discovery would help it to firm up these contentions, *Iqbal* makes clear that bare conclusions and speculation "do[ ] not unlock the doors of discovery." 556 U.S. at 678-79.

As to the good faith and exclusivity provisions, Doran's Complaint is equally opaque. Doran neither specifically alleges nor even meaningfully implies that Starwood breached the exclusivity provision by having discussions with another buyer during the 30-day exclusivity period running from August 15, 2017. That leaves only Starwood's promise to work in good faith towards finalizing a purchase contract. Although Doran's Complaint recites certain events occurring over the course of the parties' negotiations, it never asserts a particular event that demonstrates Starwood's lack of good faith.

The mere fact that Starwood asked to review Doran's design plans for the parcel or asked about Doran's other projects do not suggest that Starwood was acting in bad faith; such behavior is equally susceptible to an inference that Starwood was acting innocently, such that Doran's allegations fail to articulate a "plausible" claim. *Khalik,* 671 F.3d at 1191. Even Doran's allegation that Starwood suddenly demanded an increase in the purchase price does not, of itself, warrant an inference of bad faith. Parties negotiating a sale in good faith may nevertheless often find reasons to adjust the sale price upwards or downwards in response to unplanned events or discoveries, and Doran does not offer any facts to explain its theory as to why Starwood changed its price for the parcel. In the absence of facts suggesting that Starwood did so in bad faith, Doran's claim of breach is insufficient.

Accordingly, the Court finds that Doran's breach of contract claim must be dismissed for failure to state a claim.

**C. Promissory estoppel**

Under Colorado law, a party asserting a claim for promissory estoppel must allege: (i) that the defendant made a clear and unambiguous promise, (ii) the defendant should have expected that promise would induce the plaintiff to take action in reliance upon it; (iii) the plaintiff did indeed rely on the promise to its detriment; and (iv) that the promise must be enforced so as to prevent injustice. *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1257-58 (10th Cir. 2016).

Starwood argues first that Doran's claim for promissory estoppel is effectively preempted by the fact that the parties entered into the express Agreement. Promissory estoppel is "incompatible with the existence of an enforceable contract." *Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, LLC*, 176 P.3d 737, 741 (Colo. 2007). However, the Court has some doubt that the parties' Agreement here is an enforceable contract covering the subject matter of the alleged promise.

The facts of this case are effectively identical to *Vigoda v. Denver Urban Renewal Auth.*, 646 P.2d 900, 904-05 (Colo. 1982). There, the parties entered into an agreed-upon "Offer to Negotiate," setting forth their obligations to engage in negotiations over a future purchase of real property. The defendant abandoned negotiations after the plaintiff incurred considerable expenses, and the plaintiff sued on claims sounding in breach of contract and promissory estoppel, among others. The Court of Appeals dismissed the breach of contract claim, finding that the "Offer to Negotiate" was an unenforceable "agreement to agree," and dismissed the

promissory estoppel claim for failure to estate a claim. In the absence of a binding contract, the Colorado Supreme Court found that the plaintiff's promissory estoppel claim was viable.

This Court has similar concerns. Although Doran insists (and Starwood accepts) that the Agreement was an enforceable express contract, it would appear that, like the Offer to Negotiate in *Vigoda*, it merely established a framework for the parties' future negotiations and did not create any substantive contractual obligations to proceed with a sale. On the limited record before the Court, the Court is unwilling to conclude that Doran's promissory estoppel claim is precluded by the existence of the Agreement.

However, the Court agrees with Starwood that Doran's promissory estoppel claim warrants dismissal on the grounds that the "promises" Doran relies upon are conditional, preventing Doran from justifiably relying upon them.[2] Four of the seven "promises" that Doran cites take the form of "If Doran continued to proceed with development plans for the [ ] parcel, consistent with Starwood's wishes, [Starwood would take certain actions]." When a defendant makes a conditional "promise," any detrimental reliance by the plaintiff upon that promise prior to the condition being satisfied is unreasonable as a matter of law. *Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995). Because Doran never alleges that it presented a development plan that satisfied the condition – that Starwood deemed the plans "consistent with [its] wishes" -- Doran's actions in reliance upon Starwood's promises cannot have been justified. Thus, these conditional promises cannot support Doran's promissory estoppel claim.

---

[2] The Court has some concern that Doran has not adequately alleged how, when, and by whom such "promises" were made. It appears that the promises in question are not specific representations that Starwood actually made, but rather, understandings that Doran may have harbored, without specifically identifying the statements or actions by Starwood that led to those understandings.

7

Doran's remaining promises consist of the following: Starwood promised that it "was seeking internal approval of the Purchase Agreement," that it "intended to approve the Purchase Agreement," and that it "intended to sell [the parcel] to Doran." These promises are problematic for a different reason. Doran alleges no facts to suggest that Starwood did <u>not</u> harbor such intentions at the time – whenever that was – that the representations were made. Doran seems to assume that, because the sale wasn't completed, Starwood <u>never</u> had any intention of selling the parcel to Doran, but nothing in the Complaint warrants such an inference. Indeed, the Complaint is most susceptible to the innocent inference that Starwood initially intended to complete the sale to Doran, but then another buyer appeared on the scene and made a more favorable offer to Starwood for the parcel. Doran can hardly claim to have justifiably relied on the belief that Starwood would not entertain more favorable offers for the parcel after the Agreement's 30-day exclusivity period expired, and it has not come forward with allegations that Starwood did not honor its promises during that 30-day period. Accordingly, Doran's promissory estoppel claim is subject to dismissal as well.

Where the Court is inclined to dismiss a Complaint pursuant to Fed. R. Civ. P. 12(b), it typically grants the plaintiff at least one opportunity to amend in order to cure any pleading defects. Here, it is conceivable that Doran can assert facts sufficient to state a claim. (Whether Doran actually possesses knowledge of sufficient facts pursuant to Fed. R. Civ. P. 11(b)(3) is a different question upon which the Court offers no prediction.) Accordingly, the Court dismisses the Complaint but stays the effect of that dismissal for 14 days, within which time Doran may, if it chooses, file an Amended Complaint that adequately states a claim.

## **CONCLUSION**

For the foregoing reasons, Starwood's Motion to Dismiss **(# 12)** is **GRANTED.** The Complaint is dismissed, but the effect of this Order is stayed for 14 days, during which time Doran may, if it wishes, file an Amended Complaint that states a colorable claim. If no such Amended Complaint is filed by that time, the Clerk of the Court shall close this case.

Dated this 2nd day of August, 2018.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge